James Cory HICKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00109–CR.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 14, 2005.

Decided Jan. 6, 2006.

Troy A. Hornsby, Miller, James, Miller & Hornsby, LLP, Texarkana, for appellant.

Tina Richardson, Asst. Dist. Atty., Linden, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Billy Ray Johnson, a forty-two year-old, mentally retarded black man, had been invited to a late-September drinking party in rural Cass County, ostensibly to provide

the youthful,[1] white revelers some "entertainment" with his dancing. But Johnson became a problem when, after a dispute arose over a change in the type of music being played, Colt Amox punched Johnson once in the face, knocking him unconscious. The rest of the night, the question was what to do with the unconscious Johnson.

James Cory Hicks, one of the revelers, was, at the age of twenty-three or twenty-four, the eldest person present, except for Johnson. Hicks had arrived at the party after midnight,[2] after finishing his shift as a Cass County jailer. When most of those present suggested taking the unconscious Johnson to either the hospital or the police, Hicks nixed the idea, saying he was worried about losing his job or his children, or getting in trouble for drinking alcohol with underage persons.

After lying on the ground for approximately an hour, the still unconscious Johnson was put in the back of Amox's truck, and a convoy formed. At least two witnesses testified Hicks led the convoy. Dallas Stone and Wes Owens said Hicks told them that, when Hicks stopped his vehicle, they should put Johnson on the side of the road. At a county road leading to a local dump, in the early morning hours of September 28, 2003, Johnson was removed from Amox's truck and placed in a small sandy area approximately eight to ten feet from the roadway. Owens said he suggested the road because he thought Johnson's family lived in the area.

About 5:00 a.m., Hicks contacted local law enforcement and told them he and Owens had been driving around and came across Johnson's body lying on the side of the road. Hicks subsequently changed his story, saying Amox had hit Johnson and acted alone in moving the victim.

Johnson was finally taken to the Linden Hospital the morning of September 28. He was subsequently diagnosed with a subarachnoid hemorrhage, consistent with a blow to the head. Johnson did not fully regain consciousness for two or three days.

Hicks was charged with (a) intentionally or knowingly causing serious bodily injury to a disabled person; (b) intentionally, knowingly, or recklessly causing serious bodily injury to a disabled person, having chosen the victim based on his race or mental disability; and (c) intentionally or knowingly causing bodily injury to Johnson by omission. The jury acquitted Hicks on the first two counts, and found him guilty on the third. As required by law based on the jury's assessment, the trial court sentenced Hicks to three years' confinement and probated the sentence.[3] The trial court ordered Hicks' community supervision to be for a term of ten years.

■ On appeal, Hicks challenges the legal and factual sufficiency of the evidence

---

1. The party-goers ranged from their late teens to their early twenties.

2. Hicks was present when the disagreement between Amox and Johnson occurred. Two witnesses testified that Hicks had said someone should hit Johnson.

3. The jury's assessment of punishment included suspension of the sentence of confinement, requiring the trial court to order community supervision. See TEX.CODE CRIM. PROC. ANN. art. 42.12, § 4(a) (Vernon Supp.2005). The trial court ordered the maximum available term of community supervision, ten years. See TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 3(b), 4(b) (Vernon Supp.2005). Though not required to do so, the trial court ordered as a sanction that Hicks serve a period of confinement as a condition to receiving community supervision. See TEX.CODE CRIM. PROC. ANN. art. 42.12, § 12(a), (c) (Vernon Supp.2005).

to prove either that Hicks caused bodily injury[4] to Johnson or that Hicks had assumed Johnson's care, custody, or control. We affirm because (1) the evidence is sufficient to prove that Hicks caused bodily injury by omission, and (2) the evidence is sufficient to prove that Hicks had assumed Johnson's care, custody, or control.

■ In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In our review, we must evaluate all the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).

■ In a factual sufficiency review, the appellate court views all the evidence in a neutral light and determines whether the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State*, 146 S.W.3d 654, 664 (Tex.Crim.App.2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 486 (Tex.Crim.App.2004)).

## (1) The Evidence Is Sufficient To Prove That Hicks Caused Bodily Injury by Omission

■ In challenging the legal and factual sufficiency of the evidence to show injury by omission, Hicks argues that the delay in getting Johnson any medical attention made no difference in Johnson's condition resulting from his closed head injury. Hicks also attempts to make a distinction between failing to get Johnson prompt medical care and leaving his unconscious body lying on the side of the road for a period of time.

Section 22.04 requires that, after an initial injury, the victim must sustain further bodily injury *because* of the actor's omission. *See Dusek v. State*, 978 S.W.2d 129, 133 (Tex.App.-Austin 1998, pet. ref'd). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PEN.CODE ANN. § 1.07(a)(8) (Vernon Supp.2005).

While there is evidence Johnson's brain injury was not exacerbated by the delay in getting him medical care,[5] there was evidence the delay caused him further physical pain or physical impairment. John Elder, the deputy who first saw Johnson

4. In his brief, Hicks argued the evidence was insufficient to prove serious bodily injury. The indictment, in count three, charged Hicks with causing *bodily injury* by omission. The court's charge to the jury, in describing count three, authorized a finding of guilt on count three if the jury found Hicks had caused *serious bodily injury* by omission. Section 22.04 of the Texas Penal Code criminalizes conduct which amounts to either serious bodily injury or bodily injury. TEX. PEN.CODE ANN. § 22.04 (Vernon Supp.2005). The State did not object. The sufficiency of the evidence will be measured by applying a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). At oral argument, Hicks conceded the State had to prove only bodily injury.

5. Don Simmons, M.D., said that, as of the time of trial, Johnson's brain, an organ, was still recovering, and the presence of the subarachnoid hemorrhage does "predispose" him to a substantial risk of death. However, Simmons also testified it was likely that, even if Johnson had been brought to the hospital

on the side of the road, after Hicks called the sheriff's office, said it was a cool September morning, and Johnson, wearing only jeans and a T-shirt, was curled up in a fetal position as if cold. Johnson was making a gurgling sound as he breathed; Dallas Stone said he had to put Johnson on his side, as opposed to his back, so he could breathe. When Owens and Hicks returned to the place Johnson had been dumped, about twenty to thirty minutes after leaving him, Johnson was still making the gurgling sounds. The nurse who first saw Johnson at the hospital said Johnson was cold and shivering, had aspiration pneumonia,[6] and was covered head to toe with ant bites. At the very least, Johnson suffered bodily injury, as contemplated in the Texas Penal Code, from the ant bites and the cold. That he vomited while unconscious and was therefore having difficulty breathing showed an impairment of his physical condition. The evidence was legally sufficient to support the finding of bodily injury by omission.

Likewise, the above evidence is not too weak to support the finding of guilt beyond a reasonable doubt, nor is there evidence contrary to the verdict strong enough that the beyond-a-reasonable-doubt standard could not have been met. The evidence was factually sufficient to support the jury's finding of bodily injury by omission.

*(2) The Evidence Is Sufficient To Prove That Hicks Had Assumed Johnson's Care, Custody, or Control*

■ Hicks' third and fourth points of error claim, respectively, the evidence was legally and factually insufficient to prove he assumed care, custody, or control of the unconscious Johnson on the night in question. Hicks argues that no care, custody, or control has been assumed within the meaning of the statute unless the actor has accepted responsibility for the victim's protection, food, shelter, and medical care. We disagree.

A person commits an offense if he or she "by omission causes to a . . . disabled individual . . . bodily injury." Tex. Pen.Code Ann. § 22.04(a)(3). An omission constitutes the offense if "the actor has assumed care, custody, or control of a . . . disabled individual." Tex. Pen.Code Ann. § 22.04(b)(2).

> [T]he actor has assumed care, custody, or control [of the victim] if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child, elderly individual, or disabled individual.

Tex. Pen.Code Ann. § 22.04(d).

To properly understand these provisions, one must realize the statutory scheme is intended to protect three classes of vulnerable individuals: children, the elderly, and the disabled. Subsection (d) appears intended to protect those vulnerable individuals at least when they are part of a specific, statistically significant situation: the nontraditional domestic arrange-

immediately after the assault, the treatment and prognosis would have been the same, to-wit, "supportive care," basically monitoring the patient, and waiting for a change in condition. Johnson was comatose, or in a coma or near comatose state, for almost three days. Johnson's brother, Curtis Stephenson, testified that, after the injury, Johnson could not use a telephone book as he used to, and his

hands shook too much to draw, where he had formerly been adept at drawing. Johnson had no recall of the injury; he only recalled going to the party, then being in the hospital.

6. Aspiration pneumonia occurs when an unconscious person vomits and continues to breathe, thus aspirating fluids.

ment, such as the live-in boyfriend or girl-friend. *See Hawkins v. State,* 891 S.W.2d 257 (Tex.Crim.App.1994) (under amended Section 22.04, conviction affirmed for live-in boyfriend who failed to protect child of his partner); *Florio v. State,* 784 S.W.2d 415 (Tex.Crim.App.1990) (under former Section 22.04, conviction reversed for live-in boyfriend who failed to protect child of his partner); *Prescott v. State,* 123 S.W.3d 506 (Tex.App.-San Antonio 2003, no pet.) (parent has duty to protect child, independent of any assumption of care).

▮ We interpret Section 22.04(d) to establish a bright-line rule that, once someone has become a caretaker—even informally—for a vulnerable individual, he or she cannot then escape responsibility for the individual by arguing he or she has not assumed that individual's care, custody, or control. We do not believe the converse is true, however. If one were required to become a full-service caretaker to have assumed "care, custody, or control" of a vulnerable person, such a requirement would render meaningless the word "or" in the phrase "care, custody, or control." [7] We hold that the phrase "care, custody, or control" has more breadth than subsection (d) and that Hicks is covered by that additional breadth.

Under the Texas Penal Code, " '[p]ossession' means actual care, custody, control, or management." Tex. Pen.Code Ann. § 1.07(a)(39) (Vernon Supp.2005). An identical definition of possession applies to controlled substances. *See* Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp.2005). While the general definition of possession ordinarily is, and the con-

trolled substances definition exclusively is, concerned with possession of property rather than people, there is no limitation in the general definition making it nonapplicable here. An implicit finding of the jury was that Hicks had effective care, custody, *or* control of Johnson after Johnson's initial injury. The evidence is sufficient to support that finding.

After Johnson's injury, the majority of those present expressed a desire to get Johnson to a hospital or other aid, but Hicks squelched that idea by expressing concerns about his own personal risks posed by this situation. Hicks was the oldest of the group; was, because of his employment as a Cass County jailer, apparently cloaked with a certain air of authority—in the minds of this group of revelers, at least; and actually exerted direction and control over the group. Hicks testified on cross-examination that Johnson should have been taken to a hospital. Hicks was aware that Johnson was in need of medical attention. Hicks led the convoy of vehicles taking Johnson from the scene, and Hicks directed the others in what to do when Hicks stopped, that is, to lay Johnson on the side of the road. Instead of taking Johnson to a hospital—approximately a mile from the party's location—Hicks and company took Johnson about four miles away from the local hospital and dumped him on the side of a county road. Hicks testified he and Owens had planned to go back to get Johnson after the rest of the group disbanded. The evidence is sufficient to show that Hicks effectively assumed care, custody, or control of Johnson and became instrumental

7. *Cf. Robinson v. State,* 174 S.W.3d 320, 326 n. 4 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (State not required to prove defendant exercised "care, custody, *and* management" over cocaine; sufficient to prove "care, custody, control, *or* management" of the contraband).

in delaying Johnson's medical care, thus exposing him to the cold, the ants, and the aspiration of his own vomit. The evidence was legally sufficient for the jury to find that Hicks assumed care, custody, or control of Johnson.

Considering the evidence summarized above, we cannot say such evidence was too weak to support the jury's finding, beyond a reasonable doubt, that Hicks assumed care, custody, or control of Johnson. The evidence was factually sufficient.

We affirm the trial court's judgment.