**Affirmed and Memorandum Opinion filed May 17, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00908-CR

---

### DANIEL CRUZ A/K/A ROY NIXON MEJIA, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 13-DCR-064876**

---

## MEMORANDUM OPINION

This is an appeal from a conviction for aggravated assault against a public servant. The sole question presented is whether the evidence is legally sufficient to support the conviction. We conclude that the evidence is sufficient, and we affirm the trial court's judgment.

## BACKGROUND

An officer conducted a traffic stop late at night after she noticed a car idling at a green light. Appellant was seated in the backseat of the car, just behind his friend, Fredy, who was driving. In the front passenger seat was Sergio, another one of appellant's friends. When the car was pulled over, the officer approached on foot. Appellant refused to make eye contact with the officer, and he was sweating profusely.

The officer asked for Fredy's driver's license. When Fredy claimed that he did not have his license, Sergio grabbed a gun and extended his arm behind Fredy's seat and in front of appellant, who leaned away from the firearm. Sergio then fired two shots at the officer. The first shot hit the officer in the cheek, narrowly missing her skull. The second shot hit the officer in the chest. Because the officer was wearing a bulletproof vest, the second bullet lodged in the vest, rather than her chest cavity. Even though the bullet did not pierce the vest, the bullet still managed to cause a serious penetration wound to the officer.

The officer returned fire as Fredy sped away in the car. The officer discharged her weapon four times, and one of her shots knocked out the car's back window.

A chase ensued with speeds exceeding 120 miles per hour. During the pursuit, more shots were fired at the officer. The officer's dashboard camera captured the muzzle fire on video. According to the officer, the flashes were coming from "the rear left part of the car where the rear passenger would be."

The officer ended her chase when the car entered a residential neighborhood. The officer was not familiar with the neighborhood, and she feared that she was

being lured inside as part of an ambush. The officer waited at a nearby intersection to receive medical attention.

Police found two shell casings near that intersection, and each was determined to have originated from a separate firearm. One of the casings was fired from a 9-millimeter CZ handgun. The other casing was fired from a .45-caliber Ruger.

Later that night, an investigator located Fredy's car in a parking lot. In the trunk of the car, the investigator found a spent shell casing, two live rounds, and shattered glass. The live rounds were 9-millimeter cartridges, and they had markings indicating that they were once in a magazine.

The investigator described Fredy's car as having a backseat with cushions that could fold down and provide access to the trunk. The investigator explained that the live rounds could have entered the trunk, along with the casing and shattered glass, if the backseat had been folded down at any point after the officer shot out the back window.

Police tracked down Sergio on the night of the shooting. He was found with a .45-caliber casing in his pocket. Sergio consented to a search of his apartment, which was located nearby. Inside the apartment, police found a CZ handgun, but no other firearms. According to one officer, Sergio appeared to be surprised by the discovery of the CZ. Sergio was then taken into custody.

A few days later, Sergio's family delivered to the police two handguns that were found in the possession of Sergio's brother. One of the handguns was a .45-caliber Ruger. The other was a 9-millimeter Smith & Wesson.

A firearms expert determined that all three handguns were used in the shooting. The expert linked the Smith & Wesson to the bullet that lodged in the

officer's vest, as well as to the spent shell casing that was found in the trunk of the car. The expert linked the Ruger to the .45-caliber casing that was found at the end of the chase, and to the .45-caliber casing found in Sergio's pocket. The expert linked the CZ to the 9-millimeter casing also found at the end of the chase.

Appellant was arrested one week after the shooting. He gave a recorded statement, claiming that he did not participate in the crime. He asserted that he was simply at the wrong place, at the wrong time. Appellant also said that no shots were fired from the car after Sergio shot the officer, even though video evidence suggested the contrary.

At one point during the interview, the interrogating officer asked appellant a compound question: "You didn't fire a gun, and then the gun jammed?" Appellant responded, "Yeah." When the officer took this to mean that the gun had jammed, appellant asserted again that he did not fire a gun.

Appellant did not testify at his trial. The jury convicted him of the charged offense and assessed punishment at fourteen years' imprisonment.

## ANALYSIS

When reviewing the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The evidence is legally insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

Although we consider everything present at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact

4

finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hopper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To obtain a conviction for aggravated assault, the State was required to prove that (1) appellant committed an assault against a public servant; and (2) he either caused serious bodily injury to the public servant, or he used or exhibited a deadly weapon during the commission of the assault. *See* Tex. Penal Code § 22.02. A person commits an assault if the person (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other person will regard the contact as offensive or provocative. *Id.* § 22.01.

It is undisputed that appellant did not fire the gun that actually hit the officer or otherwise make physical contact with the officer. Thus, for the assault component, we only consider whether there is sufficient evidence that appellant intentionally or knowingly threatened the officer with imminent bodily injury. *Id.* § 22.01(a)(2). There is ample evidence of this element.

5

The record shows that three firearms were involved in this case, excluding the officer's. The jury could have reasonably concluded that appellant shot at the officer with one or more of these firearms during the high-speed chase. The dashboard camera depicted flashes of light coming from the car. The officer testified that these flashes were muzzle fire, and that they were coming from "the rear left part of the car where the rear passenger would be"—in other words, where appellant had been seated.

The physical evidence also supports a finding that appellant shot at the officer. In the trunk of the car, police found a spent shell casing, two live rounds, and shattered glass. These items could have fallen into the trunk if someone folded down the backseat, and appellant was in the best position to move the backseat because he was the only one seated there. Also, the live rounds had markings indicating that they were once in a magazine. If the jury credited appellant's statement during his interview as an admission that his gun had jammed, the jury could have reasonably concluded that these live rounds were ejected from the magazine as appellant cleared the jam.

The evidence is sufficient to support the remaining elements as well. Intent may be inferred from the surrounding circumstances. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The jury could have reasonably found that appellant intentionally or knowingly shot at the officer to threaten her, at the very least. *See Dickerson v. State*, 745 S.W.2d 401, 403 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) ("The pointing of a gun alone establishes the threat."). The jury could have also determined that appellant shot at the officer while knowing that she was a public servant because the officer was dressed in her uniform, her patrol car was marked, and her overhead lights were engaged. Finally, because a

6

gun is a deadly weapon, the jury could have found that appellant used or exhibited a deadly weapon during the commission of the assault.

Appellant argues that this case is similar to *Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012). In *Gross*, the Court of Criminal Appeals held that the evidence was legally insufficient to convict the defendant under the law of parties for a murder committed by a passenger in the defendant's vehicle. *Id.* at 188–89.

Appellant was charged as both a principal and a party. When the charge authorizes a conviction under both a principal and a party theory of liability, a court must uphold the jury's verdict if the evidence is sufficient under any one of these theories. *See Humaran v. State*, 478 S.W.3d 887, 896 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). We need not determine whether the evidence is insufficient to support appellant's conviction under a party theory of liability, as in *Gross*, because, for the reasons stated above, the evidence is sufficient to support his conviction as a principal.

## CONCLUSION

The trial court's judgment is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, McCally, and Busby.
Do Not Publish — Tex. R. App. P. 47.2(b).