

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00616-CR

Romeo **ADAMS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR9532
Honorable Jefferson Moore, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: October 23, 2019

AFFIRMED

Romeo Adams was found guilty by a jury of aggravated assault with a deadly weapon, and the trial court assessed Adams's punishment at twenty years in prison. Adams appeals the judgment, asserting the evidence is legally insufficient to support the jury's verdict. We affirm.

### SUFFICIENCY OF THE EVIDENCE

The State charged Adams with aggravated assault, alleging he shot a firearm at a car being driven by the complainant, Errika Harrell. Adams contends the evidence was insufficient to establish that a gun was fired at Harrell's car or that Adams fired the gun.

### *Standard of Review*

In reviewing the evidence to determine whether it is legally sufficient to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is the jury's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. We determine "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). "When the record supports conflicting inferences, [we] must presume the jury resolved the conflicts in favor of the prosecution and defer to that determination." *Id.*

### *Discussion*

Errika Harrell and Latasha Dukes testified that on the evening of May 28, 2017, they went to an apartment complex to get tamales from one of Harrell's friends, Anna. As they were about to leave the complex and were backing out of their parking space, Harrell and Dukes heard someone calling Harrell's name. Dukes testified she saw a man get out of a white car and walk up to the driver's side window of Harrell's car. Both Harrell and Dukes identified the man as defendant, Romeo Adams. Harrell testified she had known Adams for a number of years, he is the father of her younger sister's child, and he is friends with her brother-in-law. Harrell testified that

at the time of the offense, Adams and her brother-in-law were having some kind of issue, but she was not involved in their dispute.

Harrell and Dukes testified Adams walked up to the car and started yelling at Harrell through the driver's side window, asking her why she had flattened his tires. When Harrell responded several times that she did not know what he was talking about, Adams "took a swing" at her, but missed. Harrell then got out of her car and yelled at Adams as he was running back to his car. Harrell testified she saw Adams doing something at his car, but she could not tell what he was doing. Harrell quickly got back into her car and started speeding toward the parking lot exit because she was worried Adams might have a gun. Harrell testified Adams followed in his car right behind her, and just before reaching the exit, she heard two gunshots. After the first shot, Harrell looked behind her and saw a hand and what she believed was a "gun flash" coming from Adams's car. Harrell testified that she turned right out of the parking lot and Adams "zoomed off" in the other direction. Both Harrell and Dukes testified that although they did not actually see the gun in Adams's hand, they were certain what they heard were gunshots and Harrell testified Adams was the person shooting. The only other person Harrell and Dukes saw in the apartment complex parking lot was Anna, who had left her apartment when they did. Harrell and Dukes testified Anna later told them she had seen what happened in the parking lot and "seen some shots," so after they pulled out of the apartment complex, Anna followed them until they stopped.[1]

Harrell and Dukes testified they drove out of the neighborhood to a fast food restaurant. Harrell got out of the car and found a bullet hole in the tailgate of her Chevrolet Tahoe. Harrell

---

[1] Dukes testified Anna stayed with them until after the police arrived, and the responding officer's report lists her as a witness. However, Anna did not testify at trial and both Harrell and the investigating detective testified her telephone number was no longer in service and they had been unable to locate her.

and Dukes both testified there had not been a hole in her tailgate before the shooting. Harrell called her brother-in-law, who told her to call the police.

The patrol officer who responded to the call, a crime scene investigator, and the homicide detective who later investigated the case testified for the State. All three testified that, based on their experience of having seen numerous bullet holes, the hole in the tailgate was made by a bullet. Although none were qualified to give an expert opinion on how old the bullet hole was, they each testified based on their own knowledge and experience that the hole appeared to be of recent origin because the paint had not started flaking off around the hole and there was no rust or discoloration of the metal. Photographs of the tailgate and the hole were admitted into evidence and published to the jury.

Adams argues the evidence is insufficient to support the verdict because no person testified they saw a gun in Adams's hands. He also asserts there was no "corroboration" that Dukes was with Harrell in the apartment complex parking lot, suggesting her testimony should be discounted. He contends Harrell had a motive to lie and her testimony is "plainly unbelievable." He further asserts there is no evidence a gun was fired because there was no expert testimony establishing the hole in Harrell's tailgate had been recently made by a bullet. He postulates that a bullet would have pierced through the internal wall of the tailgate, although there was no evidence to that effect. And he criticizes the prosecution for not taking apart the Tahoe cargo door to look for bullet fragments. Finally, Adams contends the evidence is insufficient because it did not exclude the possibility that Anna had shot the firearm.

The jury was the sole judge of the witnesses' credibility and was free to believe: Harrell's testimony that Adams was driving the car that followed right behind her as she and Dukes left the apartment complex; Harrell's and Dukes's testimony that they heard gunshots; Harrell's testimony that she saw the gunfire coming from Adams's car; Harrell's and Dukes's testimony that there was

not a hole in Harrell's tailgate prior to their leaving the apartment complex; and the officers' testimony that the hole in Harrell's tailgate appeared to be a fresh bullet hole. From this evidence, a rational jury could reasonably infer that Adams fired a gun at Harrell or in her direction. The State was not required to disprove any alternative theories. *See Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

We conclude a rational jury could have found from the evidence and the reasonable inferences therefrom that Adams committed aggravated assault with a deadly weapon as charged. We therefore affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH