**Opinion filed August 31, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00175-CR
_____

## AIMA LORENA GARCIA, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR36897**

## O P I N I O N

Aima Lorena Garcia appeals her conviction by a jury of the offense of endangering a child. The trial court assessed her punishment at two years in the Texas Department of Criminal Justice, State Jail Division, suspended for a period of five years on community supervision. She asserts in two issues that the evidence was insufficient to support her conviction and that the trial court abused its discretion in denying her motion for new trial without a hearing where the motion raised a matter not determinable from the record and necessary for appeal. We reverse and acquit.

We must determine whether, after viewing all the evidence in a light most favorable to the verdict, any rational trier of fact could have found the existence of the elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v.* State, 323 S.W.3d 893 (Tex. Crim. App. 2010); Gibbs *v. State*, 819 S.W.2d 821, 834 (Tex. Crim. App. 1991). The indictment

alleged that the defendant, on or about October 27, 2009, intentionally, knowingly, recklessly, and with criminal negligence placed L.G., a child younger than fifteen years of age, in imminent danger of death, bodily injury, and physical and mental impairment by failing to properly clothe her in a manner necessary for the weather and surroundings.

Elyse Haynes, a resident of the Dakota Apartments, testified that on October 28, 2009, a girl knocked on her door. She said the girl, whom she identified as Garcia, was carrying a baby wearing nothing but a diaper. Haynes recalled that it was really cold. Haynes stated that she did not let Garcia in, but called 911. Haynes described the baby as shivering, with blue lips and a lot of snot. She estimated the age of the child as "[m]aybe two." She related that, while she was waiting for the police to arrive, she saw Garcia sitting in a vehicle that belonged to Haynes.

Haynes testified that, at some point after the police arrived, she was holding the child and it was shivering, "very, very bad." She indicated that, after she got into her the vehicle with the heater running, it took the child thirty minutes to stop shivering. She said she was concerned about the child that night because she was cold.

Zachary Chesworth testified that he is a patrol officer for the City of Midland. He said that, after being dispatched to the scene in question, he observed Garcia holding a child about one or two years of age. He described the child as wearing only a diaper. He indicated that the child appeared cold to him and that it was cold to the touch.

Kevin Bullard testified that he is a patrol officer for the Midland Police Department. He said that, when he arrived on the scene, he found Garcia holding the child, who was wearing only a Pamper. He indicated that Garcia was holding the child while sitting in a Tahoe with the doors closed and windows shut. He described the baby as shivering, with "snot and stuff on its face," and the diaper as "huge, wet, and . . . very cold to the touch." He said the baby appeared to be cold. He described Garcia as being intoxicated.

On cross-examination, Officer Bullard acknowledged that no one called paramedics or the hospital with respect to the child. On redirect examination, he indicated that he knew that, if something was not done about the child, it could turn for the worse and the infant would need medical attention. He said he observed that the baby was shivering and had blue lips from the cold. He also noted that the child was cold to the touch.

2

The State and Garcia stipulated that the child in question was Garcia's child and that the child was younger than fifteen years of age. Police department records were introduced showing that the weather at the time in question was fifty-eight degrees, with south winds at fourteen to twenty-one miles per hour.

Garcia contends that the evidence is insufficient because there is no evidence that the child was in imminent danger of bodily injury or physical or mental impairment. One of the elements of the offense of endangering a child is that the defendant's conduct placed the child in imminent danger of bodily injury or physical or mental impairment. TEX. PENAL CODE ANN. § 22.04 (Vernon 2011). While the evidence presented in this case showed that the child was quite cold and one could infer that, if the child had remained outside with the same clothing the child might have been in imminent danger of bodily injury or physical or mental impairment, we conclude that one could not reasonably determine from the evidence that Garcia's conduct placed the child in imminent danger of bodily injury or physical or mental impairment.

The State has presented Texas authorities in which the evidence was sufficient to show imminent danger and some in which the evidence was insufficient to show imminent danger, but because none involved exposing a child to the cold, none is shown to be inconsistent with our holding. We have found two out-of-state cases involving conduct causing a child to be too cold in which the evidence was found to be sufficient: *Ellis v. State*, 642 S.E.2d 869, 870 (Ga. App. 2007), and *Ohio v. Mabrey*, No. 96048, 2011 WL 3425645 (Ohio App. Aug. 4, 2011). We find both of those cases to be distinguishable.

In *Ellis,* the child was unattended, crying, and shivering outside a home, clothed only in jeans and a tee shirt. *Ellis*, 642 S.E.2d at 870. The temperature at the time was between thirty-one and thirty-four degrees. *Id.* The child's jeans were damp, and his feet were wet. *Id.* There was evidence that the child displayed signs of mild hypothermia in that he was shivering, his lips were blue, and his body was cold to the touch. *Id.* The defendant was convicted of the offense of contributing to the deprivation of a minor. *Id.* at 871. This merely required a showing that a defendant willfully committed an act or willfully failed to act "when such act or omission would cause [the child] to be found to be a deprived child," which is a child without proper parental care or control necessary for the child's physical, mental, or emotional health or morals. *Id.* There was no requirement to prove any imminent danger of death, bodily injury, physical

3

impairment, or mental impairment. The court found the evidence to be sufficient to support the conviction. *Id.* We find this case to be distinguishable because, in *Ellis*, the State was not required to prove that the defendant's conduct caused imminent danger of bodily injury, physical impairment, or mental impairment.

In *Mabrey*, the defendant, a licensed practical nurse, left a disabled child in cold water for too long. *Mabrey,* 2011 WL 3425645, at *2-3. The State was required to show that the child suffered physical or mental injury that harmed or threatened the child's health or welfare. *Id.* at *2. It was not required to prove that there was an imminent danger of bodily injury or physical or mental impairment. A paramedic called to the house said the child was cold to the touch and his lips were very blue. *Id.* at *3. A treating nurse at the hospital testified that the child had a temperature of eighty-four degrees Fahrenheit and indicated that, at that temperature, multiple systems within the body would be shutting down. *Id.* A physician testified that what was remarkable was the profound, life-threatening hypothermia that was present on arrival at the local emergency department. *Id.* at *5. The court found that the evidence was sufficient to support the conviction. *Id.* at *7. We find this case to be distinguishable, both because the State was not required to prove that there was an imminent danger of bodily injury or physical impairment or mental impairment and because, in *Mabrey*, the State presented evidence showing that the child's injuries were life-threatening.

Because we have found the evidence insufficient to sustain the conviction, we sustain Issue One. In view of our determination of this issue, we need not determine Issue Two.

We reverse the judgment and render a judgment of acquittal.


                                                            JOHN G. HILL

August 31, 2011                                             JUSTICE

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.

4