

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-1516-11

**AIMA LORENA GARCIA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### MIDLAND COUNTY

ALCALA, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, and COCHRAN, JJ., joined. KELLER, P.J., concurred. MEYERS, KEASLER, and HERVEY, JJ., dissented.

### O P I N I O N

The State's petition for discretionary review challenges the court of appeals's judgment acquitting Aima Lorena Garcia, appellant, of her conviction for endangering a child on the basis of insufficient evidence. *See Garcia v. State*, 348 S.W.3d 930 (Tex. App.—Eastland 2011). We conclude the court of appeals properly determined that the evidence was insufficient to establish that appellant placed her child in imminent danger of bodily injury or physical impairment and, therefore, affirm.

## I. Background

At 1:51 a.m. on October 28, 2009, Elyse Haynes heard a loud knock and calls for help at her apartment door. When she looked out the window, she observed appellant crying as she held a child that appeared to be one to two years of age.  Wearing only a diaper, the child was shivering and had blue lips and a lot of mucus on her face. Haynes was "real concerned" about the child, but did not allow appellant into her home because she did not know her. Haynes did not know how long appellant had been standing outside before she knocked on the door. After Haynes refused them entry, appellant and her child entered Haynes's unlocked car, which was parked nearby.

Haynes called the police, and two police officers arrived about six minutes later.  They saw appellant inside Haynes's car with the doors shut and the windows up. When Officer Chesworth saw her in the car, appellant was holding the child loosely on her lap.  At around that same time, Officer Bullard saw appellant in the car "holding the baby up against her." The officers opened the car door and smelled alcohol coming from appellant. They also smelled vomit but could not tell if it was coming from appellant or her child. Appellant had slurred speech and appeared disoriented. She refused the officers' assistance; she was belligerent and uncooperative; and she cursed at the officers.  Appellant refused to give the names of any family member that could come to care for the child.

Officer Bullard observed that the child "was shivering, [and] had snot and stuff on [her] face."  The officers noticed that the child's body was cold to the touch and that her lips

were blue. Officer Bullard said that he knew that the child "was cold, so [he] knew that we needed to get the child in somewhere." Officer Bullard testified that he was "very much" concerned that the child was cold, "needed help," and needed to be in a "warm environment." Officer Bullard decided to arrest appellant for endangering a child because

> due to the weather and the wind and me being cold, the fact that the child was cold [], and it was 2:00 o'clock in the morning . . . . The child appeared to be unkempt . . . [with] snot and everything all over [her] nose. The fact that it was – she was in no state to take care of a child at that point due to her intoxication. I felt that the child was more – more in danger than had she, you know, been not intoxicated.

The officers also decided to arrest appellant for public intoxication.

Officer Chesworth asked appellant to hand him the child, but she refused. The officers took the child from appellant for the child's safety so that she would not be injured while the officers took appellant into custody.[1] The officers then handed the child to Haynes. When taken from appellant, the child started crying because she was "very scared."[2]

The officers commanded appellant to get out of the car. Because appellant refused to leave the car, the officers forcefully removed her, placed her in handcuffs, and escorted her into the back of the police car, which took "at least two minutes." While in the back of the police car, appellant attempted to kick out the window. She also slipped out of the

---

[1]    Officer Chesworth testified, "I asked the female, because she was so intoxicated – the female was holding her, you know, loosely. I didn't want her to drop the kid, so I said, 'Well, hand us the kid and we'll try to help you out."

[2]    According to Haynes, "When the one police officer couldn't get her out, so they handed the baby off to me so they could help also. The baby was very – was crying by then. [She] was very scared."

handcuffs and lunged through the window at one of the police officers. The officers forcibly controlled her movement by handcuffing her wrists and restraining her feet.

When the police officer handed her the child, Haynes noticed she was "shivering very, very bad." Haynes said she was concerned about the baby that night because "[s]he was cold." Haynes wrapped her own robe around the child until her boyfriend brought her one of her children's jackets, which she placed on the child. Later, one of the officers placed his police jacket around the child. Haynes took the child to her vehicle, where she sat with her for almost 30 minutes in front of the car heater before the child stopped shivering.

Paramedics were never called to attend to the child and no medical attention was required. The record shows Officer Bullard's explanation for not seeking medical attention:

[State's attorney]: Okay. And as far as not calling anybody else to come and look at the child, did you feel that – why didn't you call anybody else?

[Officer Bullard]: Well, at that point, I knew if something wasn't done at the point that we were at, that it could turn for the worse and the infant would need to seek medical attention. Having been a paramedic for five years prior to coming to law enforcement, I did not feel the need at that point to call out an ambulance.

When the child ultimately left with a worker with the Texas Department of Family and Protective Services, the officer gave the worker his sweater for the child.

At the time Haynes called the police, the temperature was cool. It was 58 degrees with 69 percent humidity, and there was a breeze between 14 and 21 miles per hour. The adults were dressed for the cool weather. Appellant wore a light jacket with her skirt, and

the police officers wore thermal long-sleeve shirts and pants underneath their uniform. The child, however, wore only a diaper that was described by an officer as "huge, wet, and . . . very cold to the touch."

The Texas Penal Code states that a person commits an offense if he "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." TEX. PENAL CODE § 22.041(c). The indictment and jury charge tracked the language of the statute except for

- the exclusion of the words, "by act or omission"; and

- the inclusion of the manner and means of the offense, which stated, "by failing to properly clothe the said [complainant] in a manner necessary for the weather and surroundings."

A jury convicted appellant, and the trial court sentenced her to two years in state jail, suspended for five years of community supervision.

On direct appeal, the court of appeals determined that the evidence was insufficient:

> While the evidence presented in this case showed that the child was quite cold and one could infer that, if the child had remained outside with the same clothing the child might have been in imminent danger of bodily injury or physical or mental impairment, we conclude that one could not reasonably determine from the evidence that Garcia's conduct placed the child in imminent danger of bodily injury or physical or mental impairment.

*Id.* at 931.

We granted the State's petition for discretionary review, which presents two grounds.

First, the State asks, "Has a child sustained bodily injury from being too cold as contemplated by the Texas Penal [Code's definition for 'bodily injury']." *See* TEX. PENAL CODE § 1.07(a)(8). Second, the State asks, "By failing to properly clothe a child one to two years of age in a manner necessary for the cold weather and surroundings has appellant engaged in conduct which placed the child in imminent danger of death, bodily injury, and physical and mental impairment as contemplated by the [endangering-a-child statute]?" *See* TEX. PENAL CODE § 22.041(c). Appellant responds that the court of appeals correctly found the evidence insufficient for a jury to conclude that she placed the child in imminent danger because (1) the child was not harmed and (2) any potential threat of harm to the child was not imminent.

## II. Analysis of Sufficiency of Evidence

### A. Evidence-Sufficiency Law

To determine whether evidence is sufficient to support a conviction, a reviewing court views all the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This requires the reviewing court to defer to the jury's credibility and weight determinations because the jury is the "sole judge" of witnesses' credibility and the weight to be given testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. A reviewing court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed

in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. *See Jackson,* 443 U.S. at 326.

Evidence is insufficient to uphold a conviction when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Jackson*, 443 U.S. at 320 ("[A] 'modicum' of evidence [cannot] by itself rationally support a conviction beyond a reasonable doubt."); *Laster*, 275 S.W.3d at 518 ("After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."). If a reviewing court finds the evidence insufficient under this standard,
it must reverse the judgment and enter an order of acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The record shows that the hypothetically correct jury charge would have been consistent with the actual jury charge given in this case. Here, therefore, the evidence is sufficient to support appellant's conviction as long as it shows that

appellant, with the required culpable mental state,[3] engaged in conduct that placed her child in imminent danger of bodily injury or physical impairment.[4] *See id.*; TEX. PENAL CODE § 22.041(c).

## B.  Proof of Bodily Injury or Physical Impairment

The State's first issue questions whether the child had sustained bodily injury from being too cold.[5]  The Texas Penal Code broadly defines  "bodily injury" as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). Any physical pain, however minor, will suffice to establish bodily injury. *See Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009). A fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the

---

[3]     The offense of endangering a child requires proof that a defendant acted "intentionally, knowingly, recklessly, or with criminal negligence." TEX. PENAL CODE § 22.041(c). Appellant argues that, because she was seeking shelter for her child, she did not have the necessary culpable mental state.  The court of appeals did not address this argument, and we need not reach it because appellant prevails on other grounds.

[4]     Appellant contends that the State is limited to the manner and means alleged in the indictment, which focused on appellant's failure to properly clothe the child in a manner necessary for the weather and surroundings.  In apparent agreement, the State's two grounds in its petition for discretionary review refer only to the coldness of the child.  The State's brief, however, does make a single passing reference to appellant's intoxication as a basis for her guilt for endangering a child by claiming her intoxication made her unable to provide information about the child. But the officers did not testify that she could not give the information because she was too intoxicated to coherently speak with them; rather they said she was combative and angry with the officers and refused to give the information. Furthermore, although the title of the State's second issue includes a reference to imminent death or mental impairment, nothing else in the State's brief suggests that the State was relying on these theories to establish appellant's guilt.

[5]     The State confines its ground for review to "bodily injury." The body of the argument in the State's brief, however, refers to "pain and physical impairment." We, therefore, address both pain and physical impairment in this section.

natural causes of it. *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.). The Penal Code does not define "physical impairment," but Texas courts have interpreted "impairment" to include the diminished function of a bodily organ. *See Camarillo v. State*, 82 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.) (impairment where injury to victim's nose rendered breathing difficult); *Adams v. State*, 969 S.W.2d 106, 111 (Tex. App.—Dallas 1998, no pet.) (impairment where defendant's conduct interfered with victim's ability to stand and walk); *Contreras v. State*, 54 S.W.3d 898, 904 (Tex. App.—Corpus Christi 2001, no pet.) (defendant's failure to provide child adequate nourishment that resulted in chronic malnutrition constituted bodily injury or physical impairment).

Viewing the evidence in a light most favorable to the jury's verdict, we conclude that no rational fact finder could have determined that appellant's child had sustained bodily injury or physical impairment. Although there is evidence that the child was shivering, had blue lips, and wore only a wet diaper, no evidence shows that she was experiencing physical pain or impaired organ function from being exposed to the 58-degree weather while wearing only a wet diaper. Haynes testified that the child did not cry until she was taken from her mother's arms and that, at that point, the child was "very scared."[6] The evidence in the record shows that appellant quickly placed the child in a car with the doors closed and the

---

[6] In its brief, the State contends that the "witnesses consistently stated that the child was . . . crying." This is inaccurate. Haynes testified that the child had "just a lot of snot from maybe crying or just cold." The trial court sustained appellant's objection that the answer called for speculation and instructed the jury to disregard the comment. The record shows that only appellant was crying at Haynes's door and that the child did not cry until she was removed from appellant's arms.

windows up after they were turned away from Haynes's apartment door. While inside the car, appellant sometimes held the child close to her, which would give the child some warmth from appellant's body, but at other times appellant held the child loosely. At most, the record shows that the child was shivering and had blue lips, which would signify that she was very cold, but she was not crying or otherwise exhibiting any signs of pain or impairment. Although we recognize that a child could sustain bodily injury or physical impairment from exposure to extreme temperatures for a short time or from exposure to more moderate temperatures outdoors for an extended time, the record does not establish that either of those situations occurred here. Based on the sparse record in this case, the jury could not have reasonably inferred that the child experienced bodily injury or physical impairment.

### C. Proof of Imminent Danger of Bodily Injury or Physical Impairment

The State's second issue argues that appellant's failure to properly clothe her child for the cold weather placed her child in imminent danger of bodily injury or physical impairment. *See* TEX. PENAL CODE § 22.041(c). Although the Texas Penal Code does not define "imminent," this Court has defined that term to mean "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (internal quotations omitted); *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex. App.—Austin 2002, pet. ref'd) (same). We conclude, as did the court of appeals, that no rational fact finder could determine that the facts establish imminent danger of bodily injury or physical impairment.

No evidence shows that physical pain or impairment was "ready to take place." *See Devine*, 786 S.W.2d at 270. No evidence shows how long appellant had been outside with the child. The evidence only shows that appellant was at Haynes's door for a short time before she sought shelter in Haynes's car, the doors of which were closed and the windows up. At least part of the time while they were inside the car, appellant held the child up against her, which would have given the child heat from appellant's body. Although the child wore only a diaper, was shivering, was cold to the touch, had blue lips, and had a lot of mucus, she never cried while at Haynes's door nor while inside the car with appellant; she only cried when she became scared after the police officers took her from appellant's arms. Evidence that Haynes and the police officers desired to move the child to a warmer place suggests that the child would have been more comfortable elsewhere, but it does not establish that physical pain or impairment was imminent.

Furthermore, evidence that the police wore thermal underwear is not evidence that the child was endangered by a lack of warmer clothing. The officers' warm clothing may have been preferable, but it does not necessarily follow that the absence of that type of attire rendered bodily injury or physical impairment imminent.

Because Haynes could not say how long appellant had been at her door, no direct evidence shows how long appellant had the child outside before entering the car. The State suggests that the fact that the child was shivering with blue lips when Haynes saw her shows that appellant had the child outdoors for longer than a few minutes. But nothing in the record

indicates how long it would take this child to start shivering or for her lips to turn blue. Using its collective common sense and personal knowledge of the typical human body's reaction to cold, the jury could have determined that the child had been outside for more than just a few minutes. There is no evidence in the record, however, from which the jury could reasonably infer any particular length of time beyond the few minutes it might take someone to first develop shivering and blue lips. *See Hooper*, 214 S.W.3d at16 ("A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.")

Officer Bullard testified that he did not believe the child needed medical attention, but that he "knew if something wasn't done at the point that we were at, that it could turn for the worse and the infant would need to seek medical attention." He never testified, however, that he believed the child was in imminent danger of physical pain or impairment. *See* TEX. PENAL CODE § 22.041(c). At most, he said it "could" have turned for the worse, suggesting a possibility of an occurrence rather than an imminent danger of it.

The question is not whether the child would have been more comfortable if she was warmer, but whether the child was placed in danger of imminent bodily injury or physical impairment due to the cold and the lack of clothing. Viewed in a light most favorable to the verdict, the evidence in this sparse record shows that the child was outside in almost sixty-degree weather for what the evidence can only establish was a short amount of time; the child was sheltered in a car by appellant who sometimes held her close to her body; and the child,

though obviously cold, did not cry until she was taken from her mother's arms. We, therefore, cannot conclude that any rational fact finder could determine beyond a reasonable doubt that appellant placed her child in imminent danger of bodily injury or physical impairment.[7] We overrule the State's issues and hold that the court of appeals properly concluded that the evidence was insufficient to sustain the conviction.

### III. Conclusion

We affirm the judgment of the court of appeals.

Delivered: June 6, 2012

Publish

---

[7]     The cases that the State cites are distinguishable and unpersuasive. *See Hicks v. State*,183 S.W.3d 869, 873 (Tex. App.—Texarkana 2006), *rev'd on other grounds*, 241 S.W.3d 543 (Tex. Crim. App. 2007) (victim suffered bodily injury from "head to toe" from ant bites and cold temperature as result of being left on side of road entire night); *Laster v. State,* 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) (in intentional assault case, evidence is sufficient to show "bodily injury" for "even relatively minor physical contact if it constitutes more than offensive touching.").