**Opinion filed February 13, 2020**



## In The

# Eleventh Court of Appeals

_____

## No. 11-18-00042-CR

_____

## JOHNNY ALLEN WINFIELD, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 12840-D**

## M E M O R A N D U M   O P I N I O N

Appellant, Johnny Allen Winfield, entered a plea of guilty to the offense of assault family violence (enhanced), a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2019). Appellant's punishment was assessed at confinement for a term of ten years and a $1,000 fine. The trial court suspended the imposition of the sentence and placed Appellant on community supervision for a

period of eight years. The State subsequently filed a motion to revoke Appellant's community supervision. After a hearing, the trial court granted the State's motion, revoked Appellant's community supervision, and imposed the original sentence of confinement for ten years and a $1,000 fine. In his single issue on appeal, Appellant argues that the trial court abused its discretion by revoking Appellant's community supervision because the State failed to meet its burden by a preponderance of the evidence. We affirm.

*Background Facts*

On September 20, 2017, Appellant pleaded guilty to a felony charge of assault family violence and was placed on community supervision for a period of eight years. During his plea, Appellant was informed that he was required to abide by certain conditions as part of his community supervision. Importantly, he was prohibited from contacting Stephanie Keith, the victim of his crime, directly or indirectly. He was also prohibited from committing any new offenses while on community supervision. The trial court accepted Appellant's plea, and he was released from jail later that day around 5:00 p.m.

That night, around 11:00 p.m., Keith heard a window break and ran outside to see a man she believed to be Appellant running away from her home. Her son's bedroom window had been broken by two small rocks. After she called the police, Keith called the jail to see if Appellant had been released. It was then that Keith learned that Appellant had been released from jail earlier that day. At this point, she knew it was Appellant whom she had seen running away from her home.

The police arrived and remained at the residence for approximately thirty minutes. After they left, Keith heard another noise that sounded like glass shattering. Once again, she ran outside to see a man she believed to be Appellant running away from her home. This time, however, a large rock had been thrown through the front

windshield of a Lincoln that was on Keith's property. Police officers then returned to Keith's home and remained in the area to keep an eye on the house.

According to Appellant, he never went anywhere near Keith's home on the night in question, nor did he have anything to do with the broken windows. Appellant maintains he was at his mother's house that evening until he left to meet up with some of his friends. Unable to find his friends, Appellant says he went to Whataburger before ultimately returning to his mother's house where he slept outside underneath the carport.

The next morning, September 21, 2017, Appellant was arrested when he went to check in with his probation officer because the State had filed a motion to revoke Appellant's community supervision. The motion to revoke alleged the following:

1) Said defendant, Johnny Winfield, violated condition A which states he will commit no offense against the laws of this state or any other state, or the United States; in that said defendant, Johnny Winfield, on or about the 20th day of September, 2017, in the County of Taylor and State of Texas, did then and there intentionally or knowingly damage or destroy tangible property, to-wit: widows [sic], by throwing rocks, without the effective consent of Stephanie Keith, the owner of said property, and did thereby cause pecuniary loss of $50 or more but less than $500 to the said owner;

2) Said defendant, Johnny Winfield, violated condition R which states defendant is to have NO contact, direct or indirect with the victim; in that said defendant, Johnny Winfield, did have contact with the victim on or about September 20, 2017.

After a hearing on the State's motion, the trial court revoked Appellant's community supervision and sentenced him to confinement for a term of ten years and a $1,000 fine. This appeal followed.

3

*Standard of Review*

We review a trial court's decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the State must prove that a defendant violated the terms of community supervision by a preponderance of the evidence. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). The trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). The trial court abuses its discretion when it revokes community supervision after the State has failed to meet its burden of proof. *Cardona*, 665 S.W.2d at 493–94; *Hart v. State*, 264 S.W.3d 364, 366 (Tex. App.—Eastland 2008, pet. ref'd). However, we review the evidence in the light most favorable to the trial court's ruling, and proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision will support revocation on appeal. *Garrett*, 619 S.W.2d at 174; *Jones v. State*, 571 S.W.2d 191, 193–94 (Tex. Crim. App. 1978).

*Revocation of Community Supervision*

In Appellant's sole issue, he contends the trial court abused its discretion when it revoked his community supervision because the State failed to prove, by a preponderance of the evidence, that Appellant violated the conditions of his community supervision. Specifically, Appellant argues that the evidence was insufficient because Keith only became certain that the suspect was Appellant after she learned he had been released from jail earlier that day. We disagree.

Appellant's argument relies heavily on his interpretation of *Hacker v. State*, 389 S.W.3d 860 (Tex. Crim. App. 2013). *Hacker*, like this case, concerned a probation revocation in a family violence case. *Id.* at 863. Unfortunately for

Appellant, that is where the similarities end. In *Hacker*, there was an exception to the no-contact condition allowing the defendant to contact his wife for purposes of coordinating child custody. *Id.* at 863. When the trial court revoked the defendant's community supervision, it cited the continuous phone conversations between the defendant and his wife as evidence he had violated the no-contact condition. *Id.* at 864. The Court of Criminal Appeals noted, however, that "[the defendant's] admission that he talked to his wife on the telephone frequently for the purpose of child custody was not an admission that he engaged in conduct that violated his probation." *Id.* at 866. Without knowing the subject matter of those telephone conversations, "this evidence was mere 'suspicion linked to other suspicion.'" *Id.* at 874 (quoting *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003)).

Here, no such exception to the no-contact condition existed. There was no provision allowing Appellant to throw rocks through Keith's window and windshield so long as he had a specific motive for doing so. Accordingly, if credible evidence proved by a preponderance of the evidence that Appellant went to Keith's home and threw rocks through her window and windshield, the trial court did not abuse its discretion. Such evidence cannot be considered "suspicion linked to other suspicion" when the evidence, if true, would constitute a violation of Appellant's community supervision.

At the hearing on the motion to revoke, Keith testified that the suspect resembled Appellant. Though Keith dated Appellant for over a year, she testified that she was not certain it was him "because [she] thought he was locked up." Still, Keith continued: "I called and found out he was released. So, that's when I knew it had been him because it looked just like him . . . . The second time when I saw him, I just - - it looked just like him from the first time, but I just didn't see his face." The State reiterated during closing argument that, although Keith did not see

Appellant's face, her testimony was trustworthy in light of her familiarity with Appellant: "She dated him for a year. He isn't a stranger. . . . When she says, I saw him, that was him . . . ."

In addition to the eyewitness testimony of Keith that Appellant was the individual she saw outside her home, the State also presented multiple letters that Appellant sent while he was in jail. The first letter admitted into evidence was from Appellant to Keith's mother and was dated September 8, 2017, twelve days before Appellant was released. In the letter, Appellant said: "I care more for people that don't care about me so I'm going back to the old me and hope when I do get out I will OD one day and finally be free and happy." Keith testified that she believed the letter suggested that Appellant had every intention of "messing with [her] and [going] back to doing the dope" when he got out of jail.

The other two letters were sent by Appellant to the district attorney prior to Appellant's plea on September 20, 2017. In those letters, Appellant angrily accused Keith of lying and blamed her for his confinement. Moreover, in one of the letters, Appellant admitted to breaking the windows on Keith's house and vehicle at the time of the initial offense back on July 25, 2016. He reaffirmed this during the hearing on the motion to revoke, stating that in July of 2016 he punched out two windows and threw a brick through the windshield of a truck while fighting with Keith.

Based on the combined and cumulative force of the evidence, we hold that the State proved by a preponderance of the evidence that Appellant violated the conditions of his community supervision. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). Accordingly, the trial court did not abuse its discretion when it revoked Appellant's community supervision. We overrule Appellant's sole issue. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


February 13, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.