**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00370-CR**
_____


**TOMMIERETTA GUNNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**


**On Appeal from the Ninth District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-11-15394-CR**


**MEMORANDUM OPINION**

Tommieretta Gunner appeals her conviction for injuring a child, Aaliyah Taylor.[1] The amended indictment relevant to Gunner's conviction alleges Gunner injured Aaliyah on or about September 5, 2016, by contacting and by shocking her with a stun gun. The case was tried to a jury, which found Gunner guilty. Following a hearing on punishment, the trial court sentenced Gunner to an eight-year sentence.

---

[1]*See* Tex. Penal Code Ann. § 22.04(a).

1

Gunner raises one issue on appeal. She argues the State failed to present sufficient evidence to prove Aaliyah experienced pain when Gunner touched her with a stun gun. The record, however, shows otherwise and includes a videorecording, without sound, of the incident that formed the basis of Gunner's indictment. For the reasons explained below, we affirm.

Standard of Review

We examine claims that argue the evidence is insufficient to support a finding of guilt under the standards established in *Jackson v. Virginia*.[2] Under *Jackson*, we must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[3] Elements of a crime are those defined in a hypothetically-correct charge.[4] A hypothetically-correct charge is one that accurately sets out the law (*as authorized by the indictment*), meaning it adequately describes the offense as described in the indictment, it does not unnecessarily increase the State's burden to prove guilt, and it does not unnecessarily restrict the State's theories concerning the defendant's liability.[5] "'*As authorized by the indictment*' means the statutory elements of the offense as modified by the charging

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

[3]*Jackson*, 443 U.S. 318; *Herron v. State*, 625 S.W.3d 144, 152 (Tex. Crim. App. 2021).

[4]*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[5]*Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018).

instrument."[6] In other words, our review of a claim alleging the evidence is insufficient to support the verdict is deferential to the role that juries play when deciding what testimony to believe and determining how much to weigh the evidence admitted in the trial that is relevant to the defendant's guilt.[7]

Gunner's appeal hinges on evidence the jurors heard relevant to the question of whether Aaliyah experienced pain when Gunner, as seen in a videorecording, touched Aaliyah several times with a stun gun. The jury inferred from the recording and the testimony of two of the State's witnesses that Aaliyah experienced pain based on the incident in the recording. Importantly, we recognize the responsibility the jury has as "the sole judge of credibility and weight to be attached to the testimony of witnesses."[8] To decide this appeal, we review the evidence to determine whether the jury's decision based on the evidence they jury heard is one that was reasonable.[9]

Gunner must prevail on one of three arguments to prevail on the issue she presents here. She must show the record (1) contains no evidence from which reasonable jurors could infer that Aaliyah suffered pain during the incident seen in the videorecording obtained of the incident on September 5, (2) conclusively

---

[6]*Id*. (emphasis added).
[7]*See Jackson*, 443 U.S. at 319.
[8]*Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 319); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
[9]*Id.*

3

establish Aaliyah suffered no pain during the incident seen in the recording, or (3) show the evidence of Aliyah's injury from the incident alleged in the indictment is so weak that no reasonable juror could have found Gunner guilty based on the evidence before the jury in the trial.[10] Since the jury found Gunner guilty, we presume the jury resolved any conflicts in the evidence by rejecting the testimony it heard that the stun gun Gunner used was not capable of holding a charge, was not activated when the incident occurred, and by finding Gunner pulled the trigger on the stun gun to activate it when she touched Aaliyah with the device based on what is seen in the recording.[11]

## Analysis

Arguing the stun gun was neither charged nor activated when it was used, Gunner contends reasonable jurors could not have found the stun gun capable of causing pain. Gunner focuses on three things to support that argument. She points to (1) the testimony before the jury explaining how the stun gun worked and whether it could hold a charge, (2) the lack of testimony from the victim about whether the victim experienced pain in the incident the jury viewed in the recording; and (3) the testimony of a forensic pathologist, who testified she found no marks or burns on Aaliyah's skin when, in October 2016, she autopsied Aaliyah's body following

---

[10]*See Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013).
[11]*Id.*

Aaliyah's death from a drug overdose, an incident unrelated to the electrical contact at issue in the trial.

The injury-to-a-child statute requires proof of *bodily injury*.[12] The *bodily injury* is defined by the Penal Code to mean "physical pain, illness, or any impairment of physical condition."[13] In most cases, proving a victim of a crime suffered physical pain is not difficult. Under Texas law, "[a]ny physical pain, however minor, will suffice to establish bodily injury."[14] Even so, proving that a victim experienced physical pain does not require that the State present direct proof from the victim that she suffered pain. In other words, juries may infer a person suffered pain from the facts and circumstances relevant to the incident alleged in the indictment that describes the defendant's conduct.[15]

The reason Aaliyah did not testify or provide the State with a statement about the incident involving Gunner contacting her with a stun gun is undisputed. Aaliyah died from an unrelated cause after the stun gun incident occurred, which the evidence shows was a drug overdose that Aaliyah suffered over a month after the incident that involved the conduct at issue in Gunner's trial. The recording the jury viewed was discovered by police during a search of Aaliyah's father's home after police learned, in October 2016, that Aaliyah had died. While the jury heard testimony that Aaliyah

---

[12]Tex. Penal Code Ann. § 22.04(a)(3).
[13]*Id.* § 1.07(a)(8).
[14]*Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).
[15]*Id.*

spoke to various individuals with the Department of Family and Protective Services in the months before the incident involving the stun gun in September 2016, the testimony of those witnesses reflects that Aaliyah, fourteen-years old in 2016, was a child with special needs, needs that included a significant impairment to Aaliyah's speech.

Even so, the testimony before the jury includes the opinions of two witnesses who testified they believed Aaliyah experienced pain when Gunner touched her with a stun gun. One of these witnesses, Detective Chris Evans, was one of several officers involved in investigating the incident seen in the recording. The incident involved in the trial occurred in Aaliyah's bedroom, where she lived with her father. As to stun guns generally, Detective Evans testified they are "capable of causing pain[.]" He also explained that a red light on the stun gun is on and can be seen in the recording when Gunner used the gun, which indicated to him that the stun gun was on and capable of administering a shock.

The other witness who suggested Aaliyah felt pain from the incident was Dr. Kathryn Pinneri, a forensic pathologist. In October 2016, Dr. Pinneri performed an autopsy on Aaliyah's body after Aaliyah died from "toxic effects of Nifedipine and Atenolol." Dr. Pinneri stated those drugs are "medications." As to the stun gun that Gunner used, Dr. Pinneri testified she could see the red light on the stun gun was on when Gunner is seen using it in the recording. Dr. Pinneri also noted that Aaliyah's leg jerks when Gunner touched Aaliyah with it on the lower part of her body. The

6

reaction, according to Dr. Pinneri, is an involuntary one "consistent with an electrical shock going through that muscle."

This Court reviewed the videorecording to discharge its responsibility of reviewing all the evidence the jury considered in the trial. We agree the recording is consistent with Dr. Pinneri's testimony that Aaliyah experienced an electrical shock to her lower body when Gunner touched her with the stun gun. Ordinary people, in our opinion, commonly and reasonably understand that a jerk in reaction to an electrical contact with a device like a stun gun or electric prod is an incident that causes pain.

We turn to Gunner's remaining arguments. First, she argues the lack of burns and scars on Aaliyah's body at autopsy shows the jury's verdict is inconsistent with the State's claim that Aaliyah was shocked. Dr. Pinneri's testimony, which we previously described, lacks merit. Dr. Pinneri also explained that the lack of marks or scars on autopsy, when performed a month or more after an electrical contact, does not show the person who suffered the electrical contact a month earlier experienced no pain when shocked. Here, jurors were entitled to use their common knowledge and experience about electricity and the facts they viewed in concluding Gunner caused Aaliyah some pain when she contacted her lower body with the prongs of the stun gun.

Finally, Gunner argues the jury could not ignore her testimony and that of her daughter who claimed the stun gun they used on Aaliyah would not hold a charge

and could not have administered a shock. According to Gunner, the only stun gun she had access to in Aaliyah's home "was the one that was uncharged." We recognize, of course, that Gunner and her daughter testified one of the two stun guns in the home was not capable of holding a charge. They also testified the red light on this model of stun gun available to them in the home shines as if the gun will cause a shock even when it is not fully charged and capable of administering a shock.

Even so, the testimony in the trial reflects there were two stun guns in the home. Neither of those stun guns was ever recovered by the police. The stun guns the jury viewed in the trial are models like the one Gunner is seen using in the recording. Gunner's daughter's testimony reflects the videorecording she made to explain how the stun gun worked also shows that gun, which belonged to Gunner's daughter, is yet a third stun gun potentially available to Gunner when the incident occurred that was at issue in the trial. The jury viewed the videorecording made by Gunner's daughter. We agree it shows the stun gun's red light comes on even when she stated the stun gun was not fully charged and could not administer a shock. But that testimony does not show the stun gun in the recording was the stun gun that Gunner used on Aaliyah. And the testimony about the fact the two stun guns would not administer a shock were made by witnesses interested in the outcome of the trial.

As the factfinder, the jury had the right to disregard their testimony and find it was not credible.[16]

Under the *Jackson* standard, the evidence allowed the jury, as a reasonable factfinder, to find Aaliyah experienced pain when Gunner used the stun gun and shocked Aaliyah as Aaliyah was lying in her bed. The jury could rely on its common experience about electricity, Detective Evans's testimony, and the testimony of Dr. Pinneri to reach its conclusion that the stun gun Gunner used was charged and that she had used it in a manner that had caused Aaliyah to experience pain.[17] Because Gunner's argument claiming the evidence is insufficient lacks merit, her issue is overruled.

## Conclusion

For the reasons explained above, we affirm the final judgment that Gunner sought to overturn in the appeal.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 1, 2021
Opinion Delivered November 3, 2021
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

---

[16]*See Temple v. State*, 390 S.W.3d at 360; *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

[17]*Garcia*, 367 S.W.3d at 688 (explaining "people of common intelligence understand pain and some of the natural causes of it").