

# NUMBER 13-23-00338-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**DARRIUS LARON ANDERSON,**                                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                               **Appellee.**

---

## ON APPEAL FROM THE 379TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Longoria**

Appellant Darrius Laron Anderson was found guilty by a jury of aggravated assault

with a deadly weapon and, after accepting Anderson's plea of true to two enhancement

paragraphs, the trial court sentenced him to thirty years' incarceration. *See* TEX. PENAL

CODE ANN. § 22.02(a)(2). Anderson challenges the sufficiency of the evidence to support his conviction. We affirm.

## I. BACKGROUND[1]

The indictment alleged in two counts that Anderson, on or about August 29, 2020, "did use and exhibit a deadly weapon, NAMELY: A FIREARM, and [Anderson] did intentionally and knowingly THREATEN IMMINENT BODILY INJURY" to Kaytlyn Epperley and Robert Tribble by "SHOOTING AT AND IN THE DIRECTION OF THE COMPLAINANT[S] WITH SAID DEADLY WEAPON."

At trial, San Antonio Police Department (SAPD) Officer Marcos Tonche testified that on August 29, 2020, he was dispatched to the scene of a shooting on Highway IH-35. When he arrived on scene, he located a vehicle on the shoulder of the highway and stated that the complainants were located at the nearby Toyota dealership. The vehicle had multiple bullet holes in the driver's side. There was no suspect or suspect vehicle at that time. Officer Tonche spoke to the complainants, obtained their statements, and contacted the Homicide Unit for follow-up investigation. Officer Tonche was provided a license plate of the suspect's vehicle from one of the complainants, which he determined was a 2012 "brown Chevrolet sedan" registered to Jarshay L. Minor.

SAPD Officer Monica Flores testified that she was dispatched for a domestic violence call on August 30, 2020, the complainant being Minor. Minor reported that she was assaulted by Anderson. Officer Flores stated that the assault involved a "Chevrolet

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it conflicts with our own. *See* TEX. R. APP. P. 41.3.

Malibu 2012, brown color." Minor also alleged that Anderson had slashed her vehicle's tires and that she had a recording of the slashing. The property damage was photographed. Subsequently, Officer Flores contacted SAPD's Special Victim's Unit to take a statement from Minor regarding the family violence. Officer Flores also filled out a form "2089" with Minor that is known as the family violence threat assessment checklist. While taking the report from Minor, Minor also provided Officer Flores with paperwork for a firearm that she owns, which was unaccounted for at the time, including the serial number.

Complainant Tribble testified that he and his girlfriend, Epperley, were on their way to breakfast, merging onto IH-35 when they saw "a vehicle on the right-side shoulder with somebody standing outside the passenger door striking somebody in the passenger's seat." Epperley was driving and she pulled her vehicle over "to intervene." Epperley stopped her vehicle approximately fifty feet in front of the subject vehicle and Tribble exited the car, while trying to call 911. He stated that he "made it to about [ten] feet in front of the vehicle before the guy who was hitting whoever was in the passenger's seat . . . — noticed that [he] was approaching the vehicle." The male then jumped into the subject vehicle through the passenger's side, climbing over the female to position himself into the driver's seat. When the male got into the driver's seat, Tribble explained that he saw the male reach into the back seat of the vehicle "digging for something" while the female yelled at Tribble to "get away." At that point, Tribble started "jogging" back toward Epperley's vehicle and stated that "that's when they . . . left from where they were parked and started pulling up next to me. And [he] had dove behind [Epperley's vehicle] . . . because [he] started hearing gunshots go off as they were driving away." He

3

did not see the firearm but did see the damage to Epperley's vehicle and knows that a firearm caused the damage. He stated that he was very concerned because Epperley was still in the vehicle and the shots were at the driver's side of the vehicle, where she was sitting. He said the entire altercation lasted "[m]aybe [forty-five] seconds, if that." After the gunshots, he called 911. He made a statement at the scene and described the male as an African American with facial hair and tattoos. The next day he met with a detective but was not able to identify the shooter in a photographic lineup.

Epperley testified that she and Tribble were going out for breakfast and along the route, Tribble saw someone "hitting a girl on the side of the road" and instructed Epperley to stop the vehicle, which she did. She parked in front of the other vehicle on the shoulder of the highway. While she saw a male "having his arm back," she explained that she was focusing on "getting the license plate number to the 911 operator." While she was on the phone, the other vehicle began to pull out from behind her and drive beside her, on her driver's side and "shots started getting fired." She saw the female passenger in the other vehicle trying to stop the male from shooting at Epperley's car. Epperley testified that it was "extremely scary. It was terrifying." She stated that one of the bullets went through the door and she "felt the warmth cross over [her] lap." She did not exit the car at all during the incident and Tribble was not in the vehicle when the shots were fired.

SAPD Sergeant Matthew Porter was a homicide detective at the time of the incident. He testified that he was tasked with the follow up investigation for the shooting that occurred. As part of his investigation, he determined that Minor was the registered owner of the suspect's vehicle used during the shooting, but they were not able to locate it. Subsequently, another officer received a report from Minor regarding the incident. Upon

4

further investigation, the other officer was able to determine that the matters were related and contacted Sergeant Porter. Through this investigation, Anderson was identified as a suspect. Sergeant Porter then provided a lineup to Tribble who was unable to identify Anderson as the shooter, which did not surprise Sergeant Porter given that the interaction was brief, and Tribble was running away from the shooter when it happened. Sergeant Porter testified that Minor's missing gun was eventually retrieved from a pawn shop approximately one month after the shooting incident. Based upon Minor identifying Anderson as the shooter from the incident with Tribble and Epperley, as well as the results of his investigation, Sergeant Porter filed a charge for aggravated assault with a deadly weapon against Anderson. On cross-examination, Sergeant Porter explained that Minor's car was not processed for evidence of the shooting. He also confirmed that Anderson was not the one who pawned Minor's missing gun.

SAPD Detective Justin Moczygemba testified that he processed the scene of the shooting on the side of the highway for evidence. Specifically, he processed Epperley's vehicle wherein he located two bullets. Through his testimony, photos of the collected bullets were admitted along with Minor's gun which was retrieved at the pawn shop. SAPD Sergeant Rachel Mendez testified that she was working in the SAPD's Special Victims Unit in August 2020. She was dispatched to take Minor's statement regarding the family violence incident. Minor positively identified Anderson as the offender and as the shooter in the incident that occurred the day prior. The State also presented a firearms expert, Holli Worden, who confirmed that the bullets located in Epperley's vehicle were shot from Minor's firearm.

Minor testified that she had previously dated Anderson and that they were in a relationship on August 29, 2020. Minor stated that on the morning of August 29, 2020, Anderson was driving her to work in her vehicle, the 2012 Chevrolet Malibu, and that they were arguing. The argument escalated and became physical. Minor stated that Anderson told her that "he would wreck the car and kill [them]." After Anderson said this, Minor became fearful and "told him to let [her] out." Anderson then pulled the vehicle over and proceeded to hit and strangle her. While Minor testified that she attempted to defend herself, she said that Anderson was stronger than her. She explained that at some point, another vehicle stopped in front of them, and a white male approached their vehicle holding a phone. The male said, "I got you" or "I see you" approximately three times and Anderson responded with "Oh, you got me" or "You see me." Anderson then told Minor to close the door and as they were driving off, Anderson reached down and grabbed Minor's gun from under the seat and proceeded to shoot the gun out of the passenger's window of her vehicle. According to Minor, after this incident, Anderson left with her gun, and she did not see it again. When shown photos of her gun, she confirmed it was hers and that it was the gun used by Anderson during this shooting.

Minor testified that after the shooting, Anderson drove her vehicle to a family member's house. When they parked in the driveway, Anderson asked Minor to help him look for the shell casings in the vehicle, but she refused. She went inside Anderson's family member's home and when the family members went outside to calm Anderson down, Minor attempted to run away by leaving through the back door and "jump[ing] a few fences to get away from [Anderson]." Shortly after, Anderson came looking for her, so she went back the way she came, got into her vehicle, and drove off to her sister's house.

She did not call the police because she "didn't want any part of it." She admitted that she was afraid of Anderson and his behavior. The day after the shooting incident, Anderson showed up at Minor's place of work and slashed her vehicle's tires—a new vehicle she had purchased after the shooting. She explained that she had purchased a new vehicle because she did not want to be tied to the vehicle involved in the shooting incident. Minor was able to use her phone to record Anderson damaging her vehicle through the window of her workplace. The video was admitted without objection. After Anderson damaged her vehicle, Minor called the police and reported the tire slashing as well as the incident that occurred the day before. She stated that she was worried that Anderson's actions would have an impact on her employment.

On cross-examination, Minor was asked about why she changed vehicles and she explained that she did not want to be in the vehicle that was used in the shooting; that vehicle was parked at her sister's house, and she bought a new vehicle. She stated that she was unsure how Anderson knew the new vehicle was hers when he slashed the tires, but that it was the only vehicle parked outside of her place of employment. She also explained that she had only purchased the gun a few months prior to the incident, before becoming involved in a relationship with Anderson.

On redirect, Minor testified that she was afraid of Anderson, which is why she initially did not report the shooting incident. She testified that there was a prior incident, two weeks earlier, where Anderson assaulted her by strangling her. She stated she tried to get away and he chased her and continued to strangle her. She did not report this incident immediately because she was afraid of Anderson. She eventually reported the abuse when she reported the tire slashing and shooting incidents.

7

At the close of the evidence, the jury found Anderson guilty of both counts of aggravated assault with a deadly weapon and after a finding of true to the enhancement, the trial court sentenced Anderson to thirty years' incarceration. This appeal followed.

## II.     SUFFICIENCY

By his sole issue, Anderson challenges the legal sufficiency to support his convictions for aggravated assault with a deadly weapon.

### A.     Standard of Review & Applicable Law

We review the sufficiency of the evidence by considering "all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). The jury is the sole judge of witnesses' credibility and weight to be given the evidence presented, and we defer to those conclusions. *Hammack*, 622 S.W.3d at 914 (citing *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012)). We look to the "events occurring before, during[,] and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* at 914–15. Not every fact or piece of evidence needs to point directly to appellant's guilt, so long as the cumulative force of all the evidence supports the convictions. *Id.* at 914. "Juries are permitted to draw reasonable inferences from the evidence presented at trial 'as long as each inference is

8

supported by the evidence presented at trial.'" *Carter v. State*, 620 S.W.3d 147, 150 (Tex. Crim. App. 2021) (quoting *Hooper*, 214 S.W.3d at 15). The factfinder alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 15; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

We measure the sufficiency of the evidence by the elements of an offense as defined by a hypothetically correct jury charge. *Hammack*, 622 S.W.3d at 914. "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

A person commits aggravated assault if he intentionally or knowingly threatens another with imminent bodily injury and the person "uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a)(2). A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). Anderson does not challenge the deadly weapon finding, but rather he argues that the State did not "prove beyond a reasonable doubt that he committed the offense."

**B.** **Analysis**

The crux of Anderson's argument is that the State presented no evidence that he was the shooter in the incident that occurred on the side of the highway. He argues that Minor had other motives for her testimony, including wanting to separate herself from the crime that occurred. Anderson also argues that there was no corroboration of Minor's testimony because neither Minor's vehicle nor gun were tested for fingerprints to confirm that Anderson was involved.

The jury heard testimony from Tribble and Epperley regarding their version of the events that transpired. The jurors heard, in detail, that the couple stopped to assist what appeared to be a woman being hit by a man on the side of the road. After stopping and exiting the vehicle, Tribble approached the man and woman and the man immediately retreated into the vehicle, reached for a weapon, and began firing in the direction of Tribble and Epperley's vehicle as he drove away. Minor identified Anderson as the shooter and testified that Anderson reached across the passenger's seat to shoot at the vehicle that stopped to assist. While Anderson challenges this testimony, stating that Minor's version of events was not corroborated by police investigation, the factfinder alone decides whether to believe eyewitness testimony. *See Hooper*, 214 S.W.3d at 15. After hearing the testimony of Tribble, Epperley, and Minor, the jury was free to resolve any conflicts in the evidence when determining whether Anderson was the shooter involved in the incident. *See Young*, 358 S.W.3d at 801. While Anderson is correct that the State did not present evidence from the police investigation questioning anyone who may have had additional knowledge, he does not direct this Court to any case law or support showing that the State must do so. An eyewitness's testimony, alone, can be legally

sufficient to support a guilty verdict. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *see also Gonzales v. State*, No. 13-17-00485-CR, 2018 WL 3583582, at *1 (Tex. App.—Corpus Christi–Edinburg July 26, 2018, pet. ref'd) (mem. op., not designated for publication). Looking at the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could find beyond a reasonable doubt that Anderson committed the offenses of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2); *Hammack*, 622 S.W.3d at 914. Anderson's sole issue is overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
22nd day of August, 2024.

11