

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00116-CR

---

DESMOND RUSHAD DARNES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 084547-A-CR, Honorable Dee Johnson, Presiding

---

July 22, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant Desmond Rushad Darnes appeals his conviction for continuous sexual abuse of a child[1] under fourteen years and his resulting life sentence. In two issues, he challenges the sufficiency of the evidence and the admission of allegedly prejudicial testimony. We overrule both issues and affirm.

---

[1] TEX. PENAL CODE ANN. § 21.02.

**BACKGROUND**

In November 2013, eleven-year-old B.D. told her teaching assistant and teacher that her father, Darnes, had sexually abused her. She said, "she was being forced to have sex at home." The teacher testified that B.D. reported the abuse began about one year earlier and occurred most recently "just a few days ago." School personnel reported this to Child Protective Services, which notified Sergeant Kevin Anderson of the Amarillo Police Department.

B.D. underwent a forensic interview and sexual assault examination at the Bridge children's advocacy center. CPS investigator Mandy Griffin secured Appellant's agreement to leave the family home pending an investigation.

During her Bridge interview, B.D. did not disclose sexual abuse. She told Bridge officials her conversation with the teacher had been "just to say—I think it was bye at the end of the day."

Sexual Assault Nurse Examiner Becky O'Neal examined B.D. at an area hospital. Her medical-forensic exam record, which was admitted into evidence at trial without objection, documented a statement B.D. made to her:

> Patient states, "My Dad Desmond, he made me have sex with him. He puts his thingy, (points to front genitalia) in my thingy, my private (points to female sexual organ). He puts his thingy in my butt too. It hurts when he does it and it bled one time. It[']s at night, he tells me to go to bed but he takes me to his room while my mom is gone. He told me not to ever tell or he'd have mom send me away. It started when I was about 10 and he's done it two times since school started this year."

2

O'Neal also noted a healed tear to B.D.'s hymen, which she explained could only have been caused by some sort of penetration.

Sergeant Anderson interviewed Appellant, who denied the allegations but made statements Anderson considered significant. Appellant said that if he shot himself in the head, he would never touch her again; if he moved away and the girls were kept from him, they would be safe; and if there were supervised visitation for life, the girls would have protection from him. Anderson explained that while most suspects deny wrongdoing, Appellant's statements were unusual. Appellant also said he did not have time to offend because he was always playing video games.

CPS concluded its investigation with a disposition of "reason to believe" that Appellant sexually abused B.D. Criminal charges were delayed, however, likely due to B.D.'s denial during her Bridge interview and an ongoing desire not to discuss abuse.[2]

Appellant was indicted in September 2023, two months shy of 10 years after the allegations were initially made to law enforcement. The case proceeded to jury trial in March 2024. At trial, B.D., now twenty-one, provided extensive testimony describing an escalating pattern of sexual abuse. B.D. testified that her family[3] lived in three locations: a house on Forest Street for two years (when she was in third and fourth grades), an Amarillo hotel for two years, and an Amarillo apartment.

---

[2] Jennifer Laurich, a licensed professional counselor who saw B.D. for several months in 2015, testified that B.D. told her that Appellant sexually abused her in 2013 and that "it had been ongoing for an extended period of time," but that B.D. did not want to talk about or think about the past.

[3] Evidence showed B.D. has two older brothers, two younger brothers, and a younger sister.

3

At the Forest Street house, Appellant would touch B.D. during family "movie night," putting his hand between her legs and resting it against her vagina while they sat on a recliner. Appellant told her nobody but him was allowed to do that—that it was a "daddy-daughter bonding moment."

When the family moved to the hotel (when B.D. was in the fourth grade), the contacts intensified. Appellant would take off his clothes and instruct B.D. to "grind on him." He rubbed B.D.'s vagina in an "aggressive," "painful" manner. Appellant placed his penis between her legs and would "grind from there." At times, his penis touched her vagina.

After moving to the apartment, B.D. testified the sexual abuse paused for about five months, but physical abuse became more frequent and severe. Appellant had previously punished the children with "belts, wooden spoons, metal spoons, anything in the vicinity," but at the apartment, Appellant's discipline became "a lot more painful." When Appellant had severely punished B.D.'s brother and B.D. saw her younger sister next in line, B.D., who was in the fifth grade at the time, offered Appellant her body instead: "I offered to take her whooping first, and he said he didn't want that, so I offered him me and my coochie." After touching B.D.'s vaginal area with a bed board, Appellant then took B.D. into his bedroom where he penetrated her vagina with his hand and mouth. B.D. described the experience as painful but said she did not scream for help from her brothers "Because they were the people I was trying to save."

According to B.D., such events were recurring. In her estimation, Appellant performed oral sex on her more than five times and tried putting his finger in her vagina more than ten times.

B.D. testified that Appellant ultimately had sexual intercourse with her. This first occurred in the kitchen, where Appellant placed her on the stove, and later in the bedroom. The events caused bleeding and extreme pain. She testified Appellant had vaginal intercourse with her more than once but fewer than ten times. She also testified that she performed oral sex on Appellant and that he attempted anal intercourse.

At trial, B.D. explained why she initially denied the abuse to CPS and during her Bridge interview. Her family had extensive CPS interactions, and she was placed in foster care at age two. Appellant regularly threatened to send her back to foster care, which frightened her because she did not want to be separated from her mother. B.D. also viewed the Bridge as "government people" and had been trained not to cooperate with them. After B.D.'s November 2013 outcry, her mother called her a "whore" and "prostitute," as did her brother. B.D. testified: "I felt that I couldn't be okay if I kept having to relive the situation over and over again, more than I already have to. It was easier to say I lied than to sit there and continue to tell my story to people who had deaf ears."

**ANALYSIS**

**Sufficiency of the Evidence**

By his first issue, Appellant argues the evidence was insufficient to support his conviction, largely claiming the witness testimony was unreliable and DNA evidence was absent. He urges us to apply the reasonable-hypothesis analysis from *Hodges v. State*,

5

321 S.W.2d 307 (1959), but this analytical construct was rejected decades ago. *Geesa v. State,* 820 S.W.2d 154, 156–61 (Tex. Crim. App. 1991)*, overruled on other grounds, Paulson v. State,* 28 S.W.3d 570 (Tex. Crim. App. 2000); *Granados v. State,* 843 S.W.2d 736, 738 n.1 (Tex. App.—Corpus Christi 1992, no pet.).

In reviewing the evidence for sufficiency, we examine all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found every element beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We "defer to the jury's credibility and weight determinations because the jury is the 'sole judge' of witnesses' credibility and the weight to be given testimony." *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (*quoting Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012)).

We compare the evidence to the elements as defined by a hypothetically correct jury charge. *Metcalf v. State,* 597 S.W.3d 847, 856 (Tex. Crim. App. 2020). We consider all evidence, both direct and circumstantial, whether properly or improperly admitted. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). It is not necessary for each fact to point directly and independently to defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

A person commits continuous sexual abuse of a young child if, during a period of thirty days or more, he commits two or more acts of sexual abuse while seventeen or older against a victim who is under fourteen. TEX. PENAL CODE ANN. § 21.02(b)(1)–(2).

6

The indictment alleged Appellant committed various acts of sexual abuse, including touching B.D.'s sexual organ, causing penetration with his fingers or sexual organ, and causing contact between his sexual organ and B.D.'s mouth or anus.

B.D.'s extensive testimony detailing the prolonged sexual abuse sufficiently supports the verdict. In prosecutions under chapter 21 of the Penal Code, the uncorroborated testimony of a child sexual abuse victim alone is sufficient to support a conviction for the offense of continuous sexual abuse. *See* TEX. CODE CRIM. PROC. art. 38.07(a); *Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.). The requirement that the victim inform another person of the offense within a year does not apply when the victim was a child. TEX. CODE CRIM. PROC. ANN. art. 38.07(b). Nevertheless, the evidence shows that B.D. told school personnel and the SANE nurse of Appellant's abuse within this period. The SANE examination findings and Appellant's statements to Sergeant Anderson provide additional corroboration.

The fact that B.D. earlier denied that Appellant sexually abused her does not diminish the force of record "evidence on which reasonable jurors could find [A]ppellant guilty, beyond reasonable doubt, of committing continuous sexual abuse of a child." *Maestas v. State,* No. 07-23-00438-CR, 2024 Tex. App. LEXIS 6026, at *3 (Tex. App.— Amarillo Aug. 20, 2024, no pet.) (mem. op., not designated for publication). B.D. explained her reasons for initially denying the abuse: she was trained not to cooperate with "government people," her family berated her for reporting, and she feared separation from her mother. The jury was entitled to resolve these inconsistencies and find B.D.'s explanation credible. *Id.* at *3–4.

Moreover, Appellant's complaints about the investigation's adequacy and absent evidence are unavailing. The question is not whether the State could have presented more evidence, but whether the evidence presented was legally sufficient under the proper standard. *See Robledo v. State,* No. 07-23-00291-CR, 2024 Tex. App. LEXIS 4563, at *5–6 (Tex. App.—Amarillo June 28, 2024, no pet.) (mem. op., not designated for publication).

We conclude a rational trier of fact could have found every element of the offense beyond a reasonable doubt. We overrule Appellant's first issue.

**Admission of Evidence**

Appellant also argues the trial court erred by admitting unfairly prejudicial evidence of minimal probative value that lacked independent corroboration.[4] The State responds that Appellant made no timely objection, forfeiting appellate review.

We agree with the State. Because Appellant preserved no objection to the complained-of testimony, he has forfeited this complaint. TEX. R. APP. P. 33.1(a); *see Saldano v. State,* 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (explaining "the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence.").

We overrule Appellant's second issue.

---

[4] Appellant's complaint centers on the admission of evidence regarding his disciplinary tactics, which he characterizes as "allegations of prior uncharged, assaultive behavior."

**CONCLUSION**

Having overruled Appellant's two issues, we affirm the trial court's judgment.


Lawrence M. Doss
Justice

Do not publish.