**Opinion filed May 29, 2026**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00290-CR

_____

## JACKIE NOLAN KOCKS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR57050**

## M E M O R A N D U M   O P I N I O N

Appellant, Jackie Nolan Kocks, was charged with three counts of aggravated sexual assault of a child, a first-degree felony, and one count of indecency with a child by exposure, a third-degree felony. *See* TEX. PENAL CODE ANN. § 21.11 (a)(2)(A), (d) (West 2026), § 22.021(a)(2)(B) (West Supp. 2025). The State dismissed one count of aggravated sexual assault prior to trial, and the jury found Appellant guilty on the remaining counts. The State alleged that Appellant had

previously been finally convicted of a sexual offense against a child and two felony offenses of driving while intoxicated. The trial court found the enhancement allegations to be "true" and sentenced Appellant to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice for each count. *See* PENAL § 12.42(c)(2), (d). The trial court ordered that his sentences be served concurrently.

In two issues, Appellant contends that the evidence is insufficient to support his convictions, and the trial court abused its discretion in admitting evidence of his prior conviction during the guilt/innocence phase of trial. We affirm.

## I. *Factual and Procedural History*

H.S. is one of three children born to T.S.[1] When H.S. was six years old, she and her two siblings were sent to live with their grandparents, B.B. and V.B., where they stayed for six years.[2] Appellant, V.B.'s cousin, who is ten years V.B.'s junior, visited on occasion. The children eventually returned to live with T.S., and one year later, B.B. passed away. At trial, V.B. testified that H.S. struggled after B.B.'s death.

In June 2019, one month after B.B.'s passing, V.B. took H.S. and her siblings on a trip to the Fort Worth Zoo. T.S. was not present. Appellant, along with Appellant's minor son, adult son, adult son's wife, and V.B.'s family friend joined them. Following multiple altercations at the zoo between various family members, H.S. called T.S. and received permission to leave with Appellant instead of V.B.

---

[1]To protect the identity of the victim, we refer to the victim by the pseudonym given in the indictment and refer to family members with pseudonyms as well. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); *see generally* TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

[2]During this time, H.S.'s father was in prison on a drug conviction, and T.S. was abusing prescription medicine.

V.B. testified that she had not approved of H.S. leaving with Appellant and found it suspect that Appellant had been trying to get H.S. alone.

H.S. stated that although Appellant had only visited "a few times" when she lived with V.B., Appellant was more present after her grandfather's death. So much so that H.S. began to view Appellant as a "father figure." H.S. testified that on the drive from Fort Worth to Midland, where Appellant resided, she and Appellant discussed meditation practices and Appellant offered to locate the "chakra points" on her body once they got to his trailer. Appellant also mentioned to her that he had caught his minor son looking at sexually explicit cartoons and showed H.S. the images and videos. After they arrived at Appellant's trailer, Appellant drew H.S. a bath and shaved her legs. H.S. testified that Appellant then suggested she join him in bed.

While lying in Appellant's bed, he complimented her figure and told her she had "nice curves for [her] frame and how young [she] was." H.S. was thirteen. H.S. testified that Appellant proceeded to massage her "chakra points," take off her clothes, and digitally penetrate her before undressing himself. Appellant then asked her if "he could try to put his penis inside [her] vagina" and penetrated her vagina with his penis until he ejaculated. Afterwards, Appellant showed her the scar on his penis and told her a story about how he had been bitten by a turtle. H.S. recalled Appellant also had a tattoo on his penis. Later that same evening, Appellant took H.S. to the store to purchase a douche and then watched her use it. H.S. went home the next day.

T.S. testified that she saw behavioral changes with H.S. after she returned from spending the night at Appellant's. H.S. began "acting out" and became sexually active. When T.S. eventually confronted H.S. in late 2020, H.S. "blurted out" that Appellant had "messed with her the night that she stayed over." T.S. testified that she declined to contact law enforcement, deferring to H.S. A few weeks

3

later, however, T.S. and H.S. ended up in another argument, and H.S. disclosed more details about the sexual assault. T.S. reported the incident to law enforcement the next day. T.S. testified that H.S. has attended counseling sessions nearly every week since.

According to H.S., Appellant had promised to "put [her] in his will" if she did not say anything and cautioned that "it wouldn't be good for [their] family" if she did. H.S. testified that she loved Appellant, and it took her some time to process what had transpired. H.S. explained that she became sexually active and suicidal after the incident with Appellant because she "felt disgusted" by the "constant reminder" and "didn't want to remember the last person that touched [her] to be [him]."

The State offered, and the trial court admitted into evidence messages between Appellant and H.S. from the summer of 2019. Appellant often referred to H.S. as "baby girl" and repeatedly professed his love for her in messages. In one message sent eight days after the trip to the zoo, Appellant wrote: "I miss your little ornery behind." H.S. testified that she eventually stopped responding to Appellant's calls and texts and blocked him on social media. Photographs of Appellant's genitals were also admitted at trial and matched H.S.'s description.

On cross-examination, H.S. was questioned about her inconsistent statements regarding whether she knew about meditation before the incident and her inability to initially recall the timeline of events, identifying marks on Appellant, and the position she was in when Appellant ejaculated. H.S. testified that she left out certain details during her initial interview "because [she] was scared to be viewed differently or for anybody to think [she] was disgusting" and maintained that her testimony at trial was her way of no longer "running from the truth."

Maura Jarldane, the clinical program director at the Midland Rape Crisis and Children's Advocacy Center (CAC), explained the grooming process and the term

4

"delayed outcry," which she stated was a common occurrence in child abuse cases because child victims may be afraid or embarrassed to speak out. Jarldane stated it is likewise common for a child's initial disclosure of abuse to be incomplete. Jarldane postulated that some children need to "test the waters" and feel that they are in a safe space before they disclose the extent of the abuse. Others may experience difficulty retrieving memories and it is not until a triggering event that a child is able to recall more details.

Appellant called one witness at trial: Ovella Kennedy. Kennedy testified she was fourteen when she first met Appellant; he was twenty-six. When she was sixteen, she had Appellant's child. Kennedy testified she was staying at Appellant's trailer that evening that H.S. came over and maintained that it had only been her in Appellant's bed that evening. Messages were admitted between Appellant and Kennedy, showing that Kennedy was not in communication with Appellant for the entire month of June 2019, but messages resumed in July 2019. Kennedy additionally testified that the last time she had sexual intercourse with Appellant was in 2015 because Appellant was unable to get an erection. Kennedy hypothesized that it had been due to his chronic obstructive pulmonary disease (COPD)[3] or antidepressants.

## II. *Sufficiency of the Evidence*

In his first issue, Appellant argues that the evidence was insufficient to sustain his convictions.

### A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of

---

[3]"Chronic obstructive pulmonary disease (COPD) is an ongoing lung condition caused by damage to the lungs," and symptoms include "[t]rouble catching your breath, especially during physical activities." *COPD*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/copd/symptoms-causes/syc-20353679 (last visited May 27, 2026).

review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("[A] reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence."); *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Garcia*, 667 S.W.3d at 761 (quoting *Jackson*, 443 U.S. at 319); *Clayton*, 235 S.W.3d at 778. Therefore, if the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010);

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13); *Lee*, 676 S.W.3d at 915. Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Rather, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

Finally, we measure the sufficiency of the evidence by the elements of the charged offense as defined by the hypothetically correct charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this regard, to determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt under the *Jackson* standard, we compare the elements of the offense to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik*, 953 S.W.2d at 240). The hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Relevant to this case, a person commits the offense of aggravated sexual assault of a child if they intentionally or knowingly cause the penetration of the

child's sexual organ by any means and the child is younger than fourteen. PENAL § 22.021(a)(1)(B)(i), (a)(2)(B). Count One of the reindictment alleged that H.S. was younger than fourteen when the sexual assault occurred, and that Appellant intentionally and knowingly used his fingers to penetrate H.S.'s sexual organ. Count Two of the reindictment alleged that Appellant intentionally and knowingly used his sexual organ to penetrate H.S.'s sexual organ when H.S. was younger than fourteen. A person commits the offense of indecency with a child by exposure if, with a child younger than seventeen years of age, the person exposes their genitals knowing the child is present with intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(a)(2)(A). Count Four of the reindictment alleged that Appellant, with the intent to arouse or gratify his sexual desire, intentionally or knowingly exposed his genitals to H.S., a child under seventeen.

B. *Analysis*

In challenging the sufficiency of the evidence to support his convictions for aggravated sexual assault and indecency with a child, Appellant specifically argues that H.S.'s testimony was "rife with inconsistent and incredible statements," H.S. was an unreliable witness, and other evidence at trial proved that he was not guilty.

However, the uncorroborated testimony of a child victim is sufficient to support a conviction for aggravated sexual assault of a child and indecency with a child. *See* CRIM. PROC. art. 38.07 (West 2023); *Wishert v. State*, 654 S.W.3d 317, 328 (Tex. App.—Eastland 2022, pet. ref'd); *Mendoza v. State*, No. 11-18-00103-CR, 2020 WL 2836772, at *3 (Tex. App.—Eastland May 29, 2020, no pet.) (mem. op., not designated for publication). Further, the Texas Court of Criminal Appeals has for decades recognized that child victims cannot be expected to testify with the same clarity and ability that is expected of mature and capable adults. *Wishert*, 654 S.W.3d at 327–28. Here, H.S. testified unequivocally that in June 2019, Appellant exposed his genitals to her and penetrated her vagina digitally and with his penis.

8

To the extent that there were any inconsistences or discrepancies in H.S.'s testimony, it was the jury's exclusive role to resolve those inconsistences. *See id.* at 327; *Mendoza*, 2020 WL 2836772, at *3.

Moreover, although there were no witnesses to the offense and Kennedy testified that H.S. did not share a bed with Appellant on the evening that she slept over and that Appellant struggled to get erections, we defer to the jury's determinations regarding the witnesses' credibility because the jury is the "sole judge" of that credibility and the weight to be given the witnesses' testimony. *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (quoting *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012)); *see Jackson*, 443 U.S. at 319. The jury was free to believe all, some, or none of H.S.'s and Kennedy's testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020); *Reyes v. State*, 465 S.W.3d 801, 805 (Tex. App.—Eastland 2015, pet. ref'd).

We additionally note that the jury was informed of messages between Appellant and H.S. indicating an inappropriate relationship in June 2019, the absence of messages between Kennedy and Appellant in June 2019, V.B.'s testimony concerning Appellant's unusually heightened interest in H.S. around the time of the sexual assault, and Jarldane's expert testimony regarding the basis for delayed outcries and fragmented disclosures. Photographs of Appellant's genitals admitted into evidence also corresponded with H.S.'s description at trial of Appellant's genitals. As the trier of fact, it was not only the jury's duty to resolve conflicts, but the jury was tasked with weighing the evidence and drawing reasonable inferences from basic facts to ultimate facts, and we defer to those determinations. *See Jackson*, 443 U.S. at 326; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899.

We have reviewed the evidence in the light most favorable to the jury's verdicts, and we conclude that the record before us contains sufficient evidence from

which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant committed the offenses of aggravated sexual assault of H.S. as charged in Count One and Count Two of the reindictment and the offense of indecency with a child, as charged in Count Four. *See* PENAL §§ 21.11(a)(2)(A), 22.021(a)(1)(B)(i), (a)(2)(B); *Jackson*, 443 U.S. at 319. Accordingly, we overrule Appellant's first issue.

### III. *Rule 403 and Rule 404(b)*

In his second issue, Appellant asserts that the trial court erred in admitting evidence of his prior conviction for indecency with a child during the guilt/innocence phase of trial. Appellant "contends that the considerations of Rule 404(b) and 403 should have excluded this evidence from his trial. More precisely, [Appellant] contends that the probative value of these convictions was outweighed by a danger of unfair prejudicial effect." *See* TEX. R. EVID. 403, 404(b). But Appellant did not preserve his arguments for our review.

To preserve a complaint for appellate review, a party must present the trial court with a timely objection. *See* TEX. R. APP. P. 33.1(a); *Tates v. State*, 721 S.W.3d 268, 275–76 (Tex. Crim. App. 2025); *Burns v. State*, No. 11-16-00128-CR, 2018 WL 1660547, at *5 (Tex. App.—Eastland Apr. 5, 2018, no pet.) (mem. op., not designated for publication). Failure to object when there was an opportunity to do so generally waives error. *Burt v. State*, 396 S.W.3d 574, 577–78 (Tex. Crim. App. 2013).

During the guilt/innocence phase at trial, the State sought to admit State's Exhibit No. 13, a certified copy of Appellant's penitentiary packet, which included a prior judgment of conviction for indecency with a child that was committed on December 15, 1983. The State provided notice of its intention to use the evidence during the guilt/innocence phase, and the trial court held a pretrial hearing on the matter at the request of the State. *See* CRIM. PROC. art. 38.37, § 2-a (West Supp.

10

2025). During the pretrial hearing, Appellant challenged the sufficiency of the links to the pen packet following a fingerprint expert's testimony on the issue, and he objected to the evidence on Rule 404(b) grounds. Appellant's objections were overruled, and the trial court determined that the evidence would be admitted. The State offered the pen packet into evidence at trial. When the trial court requested a response from Appellant, he stated, "No objection, Your Honor."

Appellant argues this issue is nonetheless preserved because he argued against the State's admission of the exhibit during the pretrial hearing. Appellant, however, made no mention of Rule 403 at the pretrial hearing, instead arguing that this evidence "does not meet 404." A Rule 403 objection is not implicitly contained in relevancy or Rule 404(b) objections; rather, a specific Rule 403 objection must be raised to preserve error. *Rodriguez v. State*, No. 11-23-00187-CR, 2025 WL 2346888, at *7 (Tex. App.—Eastland Aug. 14, 2025, no pet.) (mem. op., not designated for publication); *Preston v. State*, No. 11-17-00145-CR, 2019 WL 2147719, at *4 (Tex. App.—Eastland May 16, 2019, no pet.) (mem. op., not designated for publication) (same); *Munger v. State*, No. 11-12-00023-CR, 2013 WL 6512674, at *4 (Tex. App.—Eastland Dec. 5, 2013, pet. ref'd) (mem. op., not designated for publication) (same). Therefore, Appellant did not preserve his Rule 403 argument for our review.

The same is true for Appellant's Rule 404(b) argument. While his "404" objection was raised during the pretrial hearing, by affirmatively stating "[n]o objection" at trial prior to the admission of State's Exhibit No. 13, Appellant waived his right to challenge its admission on appeal. *See Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013); *Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010); *Elliott v. State*, No. 06-22-00070-CR, 2023 WL 125595, at *3 (Tex. App.—Texarkana Jan. 9, 2023, no pet.) (mem. op., not designated for publication) (concluding that "no objection" will serve as an unequivocal indication of the

waiver of the earlier-preserved error); *Braggs v. State*, No. 14-17-00674-CR, 2019 WL 3783422, at *2 (Tex. App.—Houston [14th Dist.] Aug. 13, 2019, pet. ref'd) (mem. op., not designated for publication) ("Even assuming appellant's pretrial objection initially preserved the issue, however, appellant's 'no objection' statements constituted a waiver of any previously preserved error."). Therefore, Appellant did not preserve his Rule 404(b) argument for our review.[4]

## IV. *This Court's Ruling*

We affirm the judgments of the trial court.

W. BRUCE WILLIAMS

JUSTICE

May 29, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[4]Nevertheless, the evidence would be admissible notwithstanding Rule 404(b), as Article 38.37 supersedes the application of that rule. CRIM. PROC. art. 38.37, § 2(b) ("*Notwithstanding Rules 404 and 405, . . .* evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." (emphasis added)); *Wishert*, 654 S.W.3d at 330–31; *Garcia v. State*, No. 11-17-00343-CR, 2019 WL 6914039, at *5 (Tex. App.—Eastland Dec. 19, 2019, pet. ref'd) (mem. op., not designated for publication).